TRIVELLA & FORTE, LLP
*Attorneys for the Plaintiffs*
1311 Mamaroneck Avenue, Suite 170
White Plains, NY 10605
(914) 949-9075

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x

| | |
|---|---|
| THOMAS GESUALDI, LOUIS BISIGNANO, DARIN JEFFERS, MICHAEL O'TOOLE, MICHAEL BOURGAL, FRANK H. FINKEL, JOSEPH A. FERRARA, SR., MARC HERBST, DENISE RICHARDSON, and THOMAS CORBETT as Trustees and fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund, | Case No.: 19-CV-429<br><br>**COMPLAINT** |

Plaintiffs,

-against-

SHARK TRUCKING, INC., INDEPENDENT EQUIPMENT CORP. and INDEPENDENT TRUCKING CORP.,

Defendants.
-------------------------------------------------------------------------------x

Plaintiffs THOMAS GESUALDI, LOUIS BISIGNANO, DARIN JEFFERS, MICHAEL O'TOOLE, MICHAEL BOURGAL, FRANK H. FINKEL, JOSEPH A. FERRARA, SR., MARC HERBST, DENISE RICHARDSON, and THOMAS CORBETT as Trustees and fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund (collectively, the "Funds"), for their Complaint, by their attorneys Trivella & Forte, LLP, allege as follows:

# INTRODUCTION

This is an action by the Trustees and fiduciaries of employee benefit plans for injunctive and monetary relief, plus interest, liquidated damages, attorneys' fees and costs under Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381, *et seq.* ("MPPAA"), and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185.  This action arises from the failure and refusal of Defendant SHARK TRUCKING, INC., (hereinafter as "SHARK" or the "Company") to: (i) submit remittance forms and pay contributions for the period June 2018 through the present as required by ERISA, the Trust Agreement governing the Funds, and the applicable collective bargaining agreement; (ii) pay interest on late-paid contributions for various period between April 2014 January 2017; (iii) pay amounts determined due and owing under Audit No. 14-1109; (vi) pay amounts determined due and owing under Audit No. 15-1090; (vii) pay amounts determined due and owing under Audit No. 17-1223; (viii) pay interest and additional interest, liquidated damages, and attorneys' fees and costs due and owing on the aforesaid amounts as required by ERISA, the Trust Agreement governing the Funds, and the applicable collective bargaining agreement.  This action also seeks an Order compelling an audit of the books and records of INDEPENDENT EQUIPMENT CORP. and INDEPENDENT TRUCKING CORP.

# JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to Sections 502(e), 502(f), 515 and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e), 1132(f), 1145, and 1451(c).

2. Venue lies in this District pursuant to Sections §§ 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§ 1132(e)(2) and 1451(d), as the Funds are administered in this District.

## PARTIES

3. Plaintiffs are Trustees and fiduciaries of the Funds and, collectively, are the "plan sponsor" within the meaning of Section 3(l6)(B)(iii) of ERISA, 29 U.S.C. § 1002(16)(B)(iii). The Trustees are fiduciaries of the Funds, as defined in Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

4. The Funds are "employee benefit plans" and "multiemployer plans" within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. § 1002(3) and § 1002(37) with their principal place of business at 2500 Marcus Avenue, Lake Success, New York 11042.

5. The Funds are jointly administered by a Board of Trustees, with equal representation of labor and management representatives in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).

6. The Funds were established pursuant to the terms of various collective bargaining agreements between Building Material Teamsters Local 282 ("Local 282" or "Union"), a labor organization representing workers in an industry affecting commerce, and various employers, including SHARK, which are required to make contributions to the Funds on behalf of their workers covered by the collective bargaining agreements.

7. The Funds are maintained pursuant to the terms of the Amended and Restated Agreement and Declaration of Trust ("Trust Agreement"), which is incorporated by reference into the collective bargaining agreements. The Funds provide various pension, health and welfare, annuity, job training, vacation and sick leave, and legal services benefits to covered workers, retirees and their dependents.

8. The collective bargaining agreements and the Trust Agreement are plan documents within the meaning of Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). The Funds are third-party beneficiaries of the collective bargaining agreements.

9. Upon information and belief, SHARK at all times relevant to this action was and is, a New York domestic business corporation doing business in New York and having offices of doing business located at 500 Shames Drive, Westbury, New York 11590, and registered offices for doing business at 332 Sagamore Avenue, Mineola, New York 11501.

10. SHARK at all times relevant to this action was and is, an "Employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and Article I, Section 1 of the Trust Agreement.

11. Upon information and belief, INDEPENDENT EQUIPMENT CORP. at all times relevant to this action was and is, New York domestic business corporation doing business in New York and having offices of doing business located at 500 Shames Drive, Westbury, New York 11590, and registered offices for doing business at 332 Sagamore Avenue, Mineola, New York 11501.

12. Upon information and belief, INDEPENDENT EQUIPMENT CORP. at all times relevant to this action was and is, an "affiliate" of SHARK within the meaning of Article IX, Section 1(d) of the Trust Agreement, as upon information and belief it performed worked covered by SHARK's CBA with Local 282.

13. Upon information and belief, INDEPENDENT EQUIPMENT CORP. at all times relevant to this action was and is, an "Employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and Article I, Section 1 of the Trust Agreement.

14. Upon information and belief, INDEPENDENT TRUCKING CORP., at all times relevant to this action was and is, a New York domestic business corporation doing business in New York and having offices of doing business located at 500 Shames Drive, Westbury, New York 11590 and/or 332 Sagamore Avenue, Mineola, New York 11501.

15. Upon information and belief, INDEPENDENT TRUCKING CORP., at all times relevant to this action was and is, an "affiliate" of SHARK within the meaning of Article IX, Section 1(d) of the Trust Agreement, as upon information and belief it performed worked covered by SHARK's CBA with Local 282 and shares offices with SHARK.

16. Upon information and belief, INDEPENDENT TRUCKING CORP., at all times relevant to this action was and is, an "Employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and Article I, Section 1 of the Trust Agreement.

17. Upon information and belief, Richard E. Bohm is an owner of all named Defendants.

**FACTUAL BASIS FOR CLAIMS**

The Collective Bargaining Agreement, the Trust Agreement and
the Obligations to Contribute to the Funds

18. At all times relevant to this action, SHARK was a signatory to, or otherwise bound by and to, the Building Material Supply Industry Contract in effect for the period July 1, 2008 through June 30, 2011, which was renewed for the period July 1, 2011 through June 30, 2014, further renewed for the period July 1, 2014 through June 30, 2018 and currently in effect, as further renewed, for the period July 1, 2018 through June 30, 2023 (the "CBAs").

19. At all times relevant to this action, SHARK agreed to be bound by the Trust Agreement, or is otherwise bound thereto, which is incorporated by reference into the CBAs.

20. The CBAs expressly provides that the Employer is bound to the Trust Agreement.

21. At all times relevant to this action, the CBAs require Employers, including SHARK, to submit remittance reports to the Funds which identify the employees who performed work covered by the CBAs and to state the number of hours each such employee worked in covered employment.

22. Along with the remittance reports, the CBAs also require Employers, including SHARK, to remit contributions to the Funds on behalf of all employees who performed work covered by the CBAs, at specified rates for each hour of covered employment, subject to certain limitations set forth in the CBAs.

23. Article IX, Section 1(e) of the Trust Agreement further provides that an Employer who fails to submit the required remittance reports and/or pertinent books and records within twenty days of written demand must pay an increased monthly contribution, which is computed by first adding 10% to the number of hours for the month in which the largest number of hours were reported in the previous twelve (12) remittance reports submitted by the Employer (hereinafter referred to as the "base month").  This Section of the Trust Agreement further provides that: (1) in the event that an audit discloses unreported hours for the base month, the amount of said unreported hours plus 10% thereof shall be added to arrive at the total number of covered hours, and (2) if there is no base month because there are no previous remittance reports or audit reports, then the Employer shall be deemed to have the number of employees that the Union reports in writing that the Employer is employing, with each employee deemed to have worked 40 hours per week for the entire unreported period. Once a total number of covered hours is arrived at by the above-described methods, it is multiplied by the current contribution rates to arrive at the Employer's liability for monthly contributions.

24. The Trust Agreement provides that if the Employer fails to remit contributions by the date due, the Employer is liable to the Funds for (i) the delinquent contributions; (ii) interest at the rate of 1.5% per month (18% per year) from the date when payment was due to the date when payment was made; (iii) an amount equal to the greater of (a) the amount of interest charged on the unpaid contributions, or (b) liquidated damages in the form of 20 percent of the unpaid contributions; and (iv) the Funds' attorneys' fees and costs.

25. Article IX, Section 4 of the Trust Agreement, with the sanction of Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), authorizes the Trustees to bring actions to enforce an Employer's obligations to the Funds under its collective bargaining agreements with Local 282, including the obligation to make contributions to the Funds.

26. Article IX, Section 3 of the Trust Agreement, with the sanction of Section 502(g)(2)(B) of ERISA, 29 U.S.C. § 1132(g)(2)(B), requires payment of interest on unpaid contributions at the rate of 1.5 percent per month from the date the payment was due until it is received.

27. Article IX, Section 3(c) of the Trust Agreement, with the sanction of Section 502(g)(2)(C) of ERISA, 29 U.S.C. § 1132(g)(2)(C), requires payment of additional damages equal to the greater of the amount of interest charged on the unpaid contributions or liquidated damages in the form of 20 percent of the unpaid contributions.

28. Article IX, Section 3(a) of the Trust Agreement, with the sanction of Section 502(g) of ERISA, 29 U.S.C. § 1132(g), requires payment of attorneys' fees incurred in collection actions, whether a suit has been filed or not, equal to the actual amount billed to the Trustees by their counsel for work performed in connection with the matter.

29.     Pursuant to Article IX, Section 3, as amended, interest on unpaid contributions is calculated at the rate of 1.5 percent per month.  Prior to May 1, 2013, interest accrued from the first day of the month when the contributions are due until the date payment is received.

The Trust Agreement and
the Obligation to Permit an Audit

30.     The Trust Agreement requires an employer to submit to periodic audits of its relevant books and records.  Specifically, Article IX, Section 1(d) of the Trust Agreement provides that "[t]he Trustees may at any time audit the pertinent books and records of any Employer in connection with the Employer's contributions to the Funds."

31.     Article IX, Section 1(d) of the Trust Agreement specifically defines "pertinent books and records" to include but not be limited to:

> (1) Payroll records, including payroll journals, time cards, print-outs, ledgers or any other form of payroll record;
> (2) Payroll tax records submitted to federal and state governments including Forms 941 and W-2;
> (3) Complete business income tax returns;
> (4) Cash disbursements records;
> (5) General ledgers;
> (6) Records relating to the hiring of trucks, including equipment vouchers, invoices and payment records; and
> (7) Any other records specifically requested by the Funds' auditors, including the classification of workers, their social security numbers, and the amount of wages paid and hours worked

32.     The Trust Agreement requires an employer to submit to audit in order to verify that all contributions required under the CBA have been remitted to the Funds, that such contributions have been made solely on behalf of individuals eligible to participate in the Funds and that covered workers are receiving the required benefits and/or credits.

33.     Where an audit discloses a delinquency, an employer, in addition to paying the contributions identified as being owed, is required under Article IX, Section 3 of the Trust

Agreement to (i) interest at the rate of 1.5% per month (18% per year) from the first day of the month when the payment was due through the date of payment; (ii) an amount equal to the greater of (a) interest on the delinquent contributions or (b) liquidated damages of 20 percent of the delinquent contributions; and (iii) the Funds' attorneys' fees and costs, including the audit fee.

34. Article IX, Section 3(b)(2), provides the Trustees "shall have the right to charge a fee equivalent to that charged for one half day of auditing, plus any travel expenses incurred, where the Employer has canceled an appointment for an audit on less than one week's notice to the auditor or auditing firm".

35. Additionally, Article IX, Section 1(d) of the Trust Agreement entitles the Funds to audit any entity "affiliated with" a signatory employer that performs work covered by the CBA.

**Failure to Submit Remittance Reports & Contributions**

36. The Trust Agreement requires employers to submit remittance and contributions to the Funds.

37. Due to the division of SHARK's employee as Tier I and Tier II, it submits remittance reports to the Funds under two employer numbers, 4306 and 4307.

38. Under employer number 4306, SHARK has failed to submit remittance for the periods June 2018, and August 2018 through the present.

39. Under employer number 4307, SHARK has failed to submit remittance for the periods July 2018.

40. The Funds demanded the submission of the missing remittance reports and contributions.

41. To date, SHARK has failed and refused to submit the remittance reports and contributions.

9

42. Based on the above, SHARK should be ordered to submit the missing remittance reports and contributions for the periods June 2018 through the present, plus interest and liquidated damages, or otherwise be held liable for estimated contributions as determined by the methods set forth in the Trust Agreement, plus interest and liquidated damages.

**Interest and Liquidated Damages on Late-Paid Contributions**

43. SHARK failed to make all payments in a timely matter, as required by the CBAs and Trust Agreement.

44. SHARK submitted contributions late for various periods between the periods April 2014 and January 2017.

45. Interest owed on late-paid contributions for the period April 2014 and January 2017 is $7,526.13.

46. As a result of SHARK's untimely payments, the Funds are entitled to late-payment interest and liquidated damages as provided for in the Trust Agreement.

**Amounts Due and Owing on Account of Audit #14-1109**

47. In accordance with the Trust Agreement, the Defendant submitted its pertinent books and records to audit for the period of October 1, 2012 through September 29, 2013. The audit report was identified as Audit #14-1109. Audit #14-1109 determined that Defendant owed $148.25 in interest, less applied credits of $119.38 for a total due of $28.87.

48. By initial letter dated June 17, 2014, the Funds sent a letter to Defendant with a copy of Audit #14-1109 and demanded payment for same.

49. The audit was subsequently referred to this office for collection and an audit fee of $580.00 was therefore added to the audit.

50. The Funds, through counsel, by letter dated November 30, 2018, sent additional demand for the $28.87 balance plus the $580.00 audit fee.

51. Defendant made no payments toward the unpaid audit, which remains due and owing in the entirety, plus additional interest and liquidated damages.

**Amounts Due and Owing on Account of Audit #15-1090**

52. In accordance with the Trust Agreement, the Defendant submitted its pertinent books and records to audit for the period of September 30, 2013 through October 26, 2014. The audit report was identified as Audit #15-1090.

53. Audit #15-1090 determined that Defendant owed $15,903.29 in unpaid contributions and $662.01 in interest on the unpaid contributions and an audit fee of 696.60.

54. By letters dated June 17, 2015, the Funds sent a letter to Defendant with a copy of Audit #15-1090 and demanded payment for same.

55. Due to overpayments identified by a concomitant audit for the same period, identified as audit no. 15-1091, credits in the amount of $12,335.46 were applied to Audit #15-1090.

56. As a result of applying the credits, there remained due and owing on Audit #15-1090, $3,567.83 in unpaid contributions, $662.01 in interest on the unpaid contributions and an audit fee of 696.60.

57. The Funds, through counsel, sent additional demands for payment of the remaining balance due on the audit, most recently by letter dated November 30, 2018.

58. Defendant made no payments toward the unpaid audit, the balance of which remains due and owing in the entirety, plus additional interest and liquidated damages.

**Amounts Due and Owing on Account of Audit #17-1223**

59. In accordance with the Trust Agreement, the Defendant submitted its pertinent books and records to audit for the period of November 30, 2015 through January 1, 2017. The audit report was identified as Audit #17-1223. Audit #17-1223 determined that Defendant owed $174.43 in unpaid contributions, $244.08 in interest on the unpaid contributions.

60. By letter dated November 30, 2018, the Funds, through counsel, demand for the unpaid amounts determined by the audit plus the $997.45 audit fee.

61. By letter dated January 9, 2019, the Funds, through counsel, sent an additional letter to Defendant with a copy of Audit #17-1223 and demanded payment for same.

62. Defendant made no payments toward the unpaid audit, which remains due and owing in the entirety, plus additional interest and liquidated damages.

**Failure to Submit Books and Records of Affiliates**

63. The Trust Agreement provide that the Funds are entitled to perform and audit of any entity "affiliated with" SHARK that performs worked covered by the CBAs.

64. Upon review of SHARK's books and records for the period November 30, 2015 through January 1, 2017, it was determined that INDEPENDENT EQUIPMENT CORP. and INDEPENDENT TRUCKING CORP. were potential affiliates of SHARK.

65. Upon information and belief, INDEPENDENT EQUIPMENT CORP. and INDEPENDENT TRUCKING CORP. perform work covered by SHARK's CBAs with Local 282.

66. Upon information and belief, SHARK and INDEPENDENT EQUIPMENT CORP. and INDEPENDENT TRUCKING CORP. share office space and/or facilities and/or equipment.

67. Upon information and belief, SHARK and INDEPENDENT EQUIPMENT CORP. and INDEPENDENT TRUCKING CORP. are all owned, in whole or in part, by Richard E. Bohm.

68. Upon information and belief, SHARK and INDEPENDENT EQUIPMENT CORP. and INDEPENDENT TRUCKING CORP. are all controlled and managed by Richard E. Bohm.

69. The Funds made demand(s) to SHARK to produce the books and records of INDEPENDENT EQUIPMENT CORP. and INDEPENDENT TRUCKING CORP.

70. The Funds, through counsel, by letters dated June 1, 2017 and November 30, 2018, made an additional formal written demands to SHARK to produce the books and records of INDEPENDENT EQUIPMENT CORP. and INDEPENDENT TRUCKING CORP.

71. To date, said demands have not been complied with.

72. The Funds, though counsel, by letter dated January 9, 2019, send an additional demand to SHARK with a copy of the prior November 30, 2018, demanding payment of all the aforesaid amounts and submission of the missing remittance forms.

73. To date, all the aforesaid items remaining due and owing and outstanding.

**Other Amounts**

74. On information and belief, additional amounts may continue to become due and owing by the Employer to the Funds during the pendency of this action.

## AS AND FOR A FIRST CAUSE OF ACTION

75. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

76. Section 515 of ERISA, 29 U.S.C. § 1145, requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement… [to] make such contributions in accordance with the terms and conditions of such plan or such agreement."

77. Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a) (3), provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this title or the terms of the plan."

78. Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), mandates that, "[i]n any action bought by a fiduciary on behalf of a Plan to enforce Section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan:

　　a. the unpaid contributions,
　　b. interest on the unpaid contributions,
　　c. an amount equal to the greater of-
　　　　i. interest on the unpaid contributions, or
　　　　ii. liquidated damages…in an amount not in excess of 20 percent of the [unpaid contributions],
　　d. reasonable attorney's fees and costs of the action, to be paid by the defendant, and
　　e. such other legal or equitable relief as the court deems appropriate…".

79. SHARK, by its failure to submit remittance report for the periods June 2018 to the present, is subject to an injunction and/or award ordering it to immediately submit said remittance reports and pay all of the unpaid contributions associated therewith, or alternatively, pay all estimated contributions as determined by the methods set forth in the Trust Agreement.

80. SHARK, by its failure to remit amounts determined due and owing by the aforesaid audits, including audit fees to the Funds, is subject to an injunction and/or award ordering it to immediately pay all fees incurred by the Funds.

81. SHARK, by its failure to interest and liquidated damages to the Funds based on late-paid contributions, is subject to an injunction and/or award ordering it to immediately pay all fees incurred by the Funds.

82. SHARK, by its failure to submit the books and record of its affiliates, is subject to an injunction and/or award ordering it to allow the books and records of its affiliates be audited forthwith.

83. SHARK is also required to pay interest on the unpaid contributions from the date when payment was due to the date when payment was made, plus liquidated damages, audit costs, attorneys' fees and costs in accordance with Article IX, Section 3 of the Trust Agreement and Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2).

84. SHARK, by failing to: (i) submit remittance reports and contributions, (ii) submit amounts doing and owing as a result for the aforesaid audits, including audit fees; (iii) submit the books and records of its affiliates; and (iv) pay interest and liquidated damages on unpaid and late-paid contributions, SHARK, has violated Section 515 of ERISA, 29 U.S.C. §1145, in that it has failed to make contributions in accordance with the terms of the plan documents of the Funds, thereby giving rise to an action under 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), and is, thus, subject to the remedies under Section 502(g) of ERISA, 29 U.S.C. § 1132(g) and the Trust Agreement.

## **AS AND FOR A SECOND CAUSE OF ACTION**

85. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

86. Section 301 of the LMRA, 29 U.S.C. §185(a), provides a federal cause of action for "[s]uits for violation of contracts between an employer and a labor organization."

87. By failing to submit remittance reports and contributions due and owing, the SHARK has violated the CBA and the Trust Agreement, which is incorporated into the CBA.

88. By failing to pay amounts determined due and owing by the aforesaid audits, the SHARK has violated the CBA and the Trust Agreement, which is incorporated into the CBA.

89. By failing to pay the contributions and other amounts owing including interest and liquidated damages on the unpaid and late paid contributions, SHARK has violated the CBA and the Trust Agreement, which is incorporated into the CBA.

90. By failing to timely pay the contributions and other amounts owing, the SHARK has violated the CBA and the Trust Agreement, which is incorporated into the CBA.

91. By failing to submit the books and records of its affiliates, the SHARK has violated the CBA and the Trust Agreement, which is incorporated into the CBA.

92. The Funds are thus entitled under the LMRA Section 301(a), as well as the CBA and the Trust Agreement, to the unpaid contributions, interest on the late paid-contributions, interest on the unpaid contributions, liquidated damages on unpaid and late-paid contributions, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that the Court enter judgment:

1. Ordering SHARK to (i) submit all remittance reports due and owing or otherwise pay the estimated contributions determined by the methods set forth in the Trust Agreement, plus all amounts that become due and owing during the pendency of the action; (ii) pay unpaid contributions as determined to be due by self-reported remittance forms plus all amounts that become due and owing during the pendency of the action; plus pay (iii) unpaid contributions as determined by Audit Nos: 14-1109, 15-1090, and 17-1223; plus pay (iv) interest on the unpaid contributions at the rate of 1.5% per month from the date when payment was due to the date when payment was made; plus pay (v) interest on late-paid contributions; plus pay (vi) an amount equal

to the greater of (a) the amount of interest due on the unpaid and late-paid contributions or (b) liquidated damages of 20 percent of the unpaid and late-paid contributions; plus pay (vii) audit costs for Audit Nos: 14-1109, 15-1090, and 17-1223.

2. Ordering SHARK, INDEPENDENT EQUIPMENT CORP. and INDEPENDENT TRUCKING CORP. to produce their relevant books and records for audit forthwith.

3. Ordering SHARK to pay the Funds their reasonable attorneys' fees and costs, in accordance with Section 502(g)(2)(D) of ERISA, 29 U.S.C. §§ 1132(g)(2)(D) and Article IX, Section 3(a) of the Trust Agreement, in an amount to be determined by the Court upon subsequent application by the Plaintiffs; and

4. For such other and further equitable relief as this Court deems appropriate.

Dated: White Plains, New York
January 22, 2019

                Yours, etc.,

                TRIVELLA & FORTE, LLP

                /s/ *Arthur J. Muller III*
                _____
                ARTHUR J. MULLER III
                *Attorneys for Plaintiffs*
                1311 Mamaroneck Avenue, Suite 170
                White Plains, New York 10605
                Tel. No.: (914) 949-9075

SHARK TRUCKING, INC.
500 Shames Drive
Westbury, New York 11590

INDEPENDENT EQUIPMENT CORP.
500 Shames Drive
Westbury, New York 11590

INDEPENDENT TRUCKING CORP.
500 Shames Drive
Westbury, New York 11590

17